UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-60012-DAMIAN

UNITED STATES OF AMERICA,

vs.

STEVEN M. RATKOWSKI,

Defendant.
_____/

**FACTUAL PROFFER**

The United States of America and STEVEN M. RATKOWSKI (the "Defendant") stipulate and agree that, had this case gone to trial, the United States would have proven, beyond a reasonable doubt, the following facts, among others, which occurred in Broward County, in the Southern District of Florida, at all times material to the Information:

**Background**

1. Defendant, a former resident of Palm Beach County, Florida, and his Co-conspirator were employed by Company 1, a Fort Lauderdale, Florida based rotable and spare aircraft parts vendor. Defendant was employed with Company 1 from in and around July 1996 to in and around June 2020.

2. Defendant's work duties in Company 1's day-to-day business included, among other things, selling rotable aircraft parts for Company 1 and assisting in the exchange program to maintain Company 1's aircraft parts inventory. Defendant had access to Company 1's inventory and the PENTAGON system database that managed Company 1's inventory located at the Fort Lauderdale Execute Airport, Fort Lauderdale, Florida ("FXE"). Ratkowski had administrative rights to the PENTAGON system. Each aircraft part was listed within PENTAGON by name and

by serial number. PENTAGON was also used to facilitate orders by generating invoices between Company 1 and its customers.

3. Defendant established Secure Air Parts, Tennessee ("Secure Air"), a company that sold refurbished aircraft parts from in and around May 2019 to in and around June 2020. Secure Air was registered in the State of Tennessee with a principal place of business in Davidson County, Tennessee. Defendant conducted part of Secure Air's business by email from Broward County, Florida and, at times, from within Company 1's physical location at FXE. Defendant also conducted part of Secure Air's business by receiving exchanged aircraft parts from the sales Secure Air made at his residential address in Palm Beach County, Florida.

4. Company 1 obtained its rotable parts by purchasing aircrafts, removing the rotable parts, sending them to overhaul, and then selling them to customers on an exchange program. The exchange program worked as follows: the customer to whom Company 1 sold a refurbished part returned to Company 1 the used part being replaced to be refurbished and added it to Company 1's inventory. Most times, Company 1 sold a refurbished part to a customer and then that customer would provide Company 1 with the part it was replacing. Company 1 then overhauled, repaired, or restored the used part to a serviceable condition. The refurbished part is maintained in Company 1's inventory to be sold to a future customer.

5. In connection with their employment at Company 1, Defendant and his Co-conspirator maintained Company 1's inventory, and were among the few employees of Company 1 that had authority to accept and fulfill purchase orders. In many instances, Defendant would coordinate and accept a purchase order while his Co-conspirator would mail the purchased aircraft part.

6. Specifically, when a purchase inquiry was made by a customer to Company 1,

Defendant or his Co-conspirator would search PENTAGON to determine whether Company 1 maintained the requested aircraft part in its inventory. After checking PENTAGON, Defendant fulfilled the purchase order by accepting an electronic form of payment—generally, a credit card payment—and then mailed the part to the third-party buyer.

7. In or around June 2020, Defendant's employment with Company 1 ended. Thereafter, Defendant continued his ownership and operations of Secure Air.

**Purpose of the Conspiracy**

8. From in or around January 2020, and continuing through in or around June 2020, Defendant agreed with Co-conspirator, and others, to try to accomplish a shared and unlawful plan, that is, to obtain purchase sales orders for Secure Air at the expense of Company 1 based on materially false and fraudulent information. The unlawful purpose of the plan was for Defendant and Co-conspirator to unlawfully enrich themselves. Defendant knew the unlawful purpose of the plan and willfully joined in it.

**The Manner and Means of the Conspiracy**

9. Defendant established Secure Air. As part of its formation, Secure Air requested a line of credit with Company 2. Defendant provided Company 1 as a trade and credit reference for Company 2, and specifically provided Co-conspirator as the point of contact. Co-conspirator provided Company 2 with false and fictitious credit history information between Company 1 and Secure Air.

10. Once formed, Defendant used Secure Air to further the conspiracy's purpose of unlawfully enriching himself by fraudulently obtaining sales orders from Company 1. To accomplish this purpose, Defendant would receive a sale inquiry from a third-party purchaser by email or phone. Defendant would search Pentagon to determine whether Company 1 maintained

the part in its inventory. On some occasions, Defendant would inform the third-party that Company 1 did not have the requested part in its inventory and would redirect the sales call to Secure Air; the third-party would place an order for the part through Secure Air which was fulfilled by Defendant using Company 1's inventory. On other occasions, Defendant would receive an email directly to his Secure Air email address and agree to sell the part using Company 1's inventory, unbeknownst to Company 1 and the purchasers.

11. Thereafter, Defendant would create false and fictitious invoices purporting to sell the part to the third-party on behalf of Company 1. This process would remove the item from Company 1's inventory database. Defendant's invoices included materially false statements in that Defendant, rather than the listed customer, purchased the part for below market value. On several occasions, Defendant used Secure Air's credit card ending in -6788. Defendant would then sell the same part for a higher price to the third-party on behalf of Secure Air. Additionally, Defendant sometimes would also keep the "core" in transactions requiring part return.

12. As a result of the false and fraudulent invoices created as part of this conspiracy, Defendant unlawfully enriched himself from the sales Secure Air made at the expense of Company 1.

**Overt Acts Related to the Conspiracy**

13. On or about January 22, 2020, the Defendant created an electronic sales invoice for Company 1 which falsely and fraudulently claimed Company 1 sold two Flap Actuators for $1,250.00 each to Company 3. Instead, Defendant purchased the Flap Actuators on behalf of Secure Air using his Secure Air's credit card ending in - 6788. Defendant then sold the Flap Actuators to Company 3 for approximately $1,850.00 each. Defendant sent Company 3 an invoice by email for the parts. Company 3 sent its core part as part of the industry standard "core exchange"

4

to Defendant's residential address in Palm Beach County, Florida. Company 1 did not receive the returned core, valued at approximately $3,400.00 each, for each Flap Actuator.

14. On or about January 27, 2020, the Defendant created an electronic sales invoice for Company 1 which falsely and fraudulently claimed Company 1 sold a ECS Box Control for $500.00 to Company 4. Instead, Defendant purchased the ECS Box Control on behalf of Secure Air using his Secure Air's credit card ending in -6788. Defendant sent Company 4 an invoice by email for the part. Company 4 sent its core part as part of the industry standard "core exchange" to Defendant's residential address in Palm Beach County, Florida. Defendant then sold the ECS Box Control to Company 4 for approximately $1,500.

15. On or about June 5, 2020, the Defendant created an electronic sales invoice for Company 1 which falsely and fraudulently claimed Company 1 sold a O2 Cylinder & Regulator for $950.00 to Company 3. Instead, Defendant purchased the O2 Cylinder & Regulator on behalf of Secure Air using his Secure Air's credit card ending in -6788. Defendant then sold the O2 Cylinder & Regulator to Company 3 for $2,950.00 each. Defendant sent Company 3 an invoice by email for the part. Company 3 sent its core part as part of the industry standard "core exchange" to Defendant's residential address in Palm Beach County, Florida. Company 1 did not receive the returned core, valued at $5,310.00.

16. The Defendant's total unauthorized purchases on behalf of Secure Air caused Company 1 to suffer a financial loss of approximately $375,000.00.

*[Remainder Intentionally Left Blank]*

17. The United States and Defendant agree that these facts, which do not include all facts known to the United States and Defendant, are sufficient to prove beyond a reasonable doubt the elements of conspiracy against the United States, in violation of Title 18, United States Code, Section 371, and that Defendant is in fact guilty of that offense as charged in the Information.

HAYDEN O. O'BYRNE
UNITED STATES ATTORNEY

DATE: May 14, 2025    BY: _____
                          ADAM M. LOVE
                          ASSISTANT UNITED STATES ATTORNEY

DATE: May 14, 2025    BY: _____
                          JOSE M. QUIÑON
                          COUNSEL FOR DEFENDANT

DATE: May 14, 2025    BY: _____
                          STEVEN M. RATKOWSKI
                          DEFENDANT